Lena MAXEY, nee Jeffress, Plaintiff In Error,

v.

Leona WELCH, Howard Welch, George Douglas Welch, a minor, and George E. Smith, Defendants in Error.

No. 36685.

Supreme Court of Oklahoma.

July 9, 1957.

Rehearing Denied Sept. 24, 1957.

As Corrected Oct. 29, 1957.

Robert J. Wimbish and King & Wadlington, Ada, for plaintiff in error.

Kerr, Lambert, Conn & Roberts, Ada, for defendants in error.

WELCH, Chief Judge.

This is an appeal by Lena Maxey, nee Jeffress, from an order of the district court of Pontotoc County, denying her petition to set aside and vacate a default judgment rendered against her May 5, 1948, quieting title to certain real estate in Leona Welch and others.

The record reveals that notice by publication was mailed to Mrs. Maxey at her Denver address, February 28, 1948, containing the usual provision as to answer date, same being on or before April 10, 1948. On March 2, 1948, Mrs. Maxey mailed the notice and copy of plaintiff's petition to Lawrence Green, Attorney who had been representing her in other matters in Oklahoma, together with a letter wherein she stated, "What can you do about the enclosed petition? Please advise by return mail."

Mr. Green replied to this letter on April 5, 1948, advising her the taxes were more than the land was worth, and it would not pay her to try and redeem said land.

In October, 1948, Mrs. Maxey communicated with Mr. Robert J. Wimbish, an attorney of Ada, Oklahoma, concerning the quiet title action, and on April 17, 1950, plaintiff in error filed her petition to vacate said judgment on the ground that it was obtained against her by default, and that she was prevented from defending by reason of unavoidable casualty and misfortune, and at that time tendered for filing in the case an answer and cross-petition.

Mrs. Maxey testified that she was ill and confined to her bed at the time she received the letter from Mr. Green, and that it was due to this illness that she was actually prevented from defending against plaintiff's original action, and that she thought Mr.

Green was taking care of the case. However, there are a number of exhibits in the record which reveal that her illness did not prevent her from carrying on correspondence concerning other matters which Mr. Green was handling, and also said correspondence failed to indicate that she had any further interest in this case after she received the letter from Mr. Green advising her against trying to redeem the land in the quiet title action, until she began to correspond with her attorney herein in October, 1948.

Prior to the letter from Mr. Green, Mrs. Maxey had corresponded with an active realtor in Ada, a long time acquaintance or friend, and had received like advice from him that the taxes exceeded the then value of the land. This, and the matters formerly mentioned, might well indicate that Mrs. Maxey at that time had no interest in seeking to defend the action and concluded not to defend it. It seems that she had some revival of interest in the matter from the latter part of 1948 to 1950, but there is little, if anything, tending to show that her failure to defend this action was due to any unavoidable casualty or misfortune.

From examination of the record we are unable to find a clear showing of an abuse of discretion by the trial court in denying the petition to set aside the default judgment.

In 49 C.J.S. Judgments § 337, p. 671, it is stated:

"Except in cases where the statute gives an absolute right to relief, in which case the court cannot refuse to open the default judgment, as a general rule, a default judgment will not be opened or vacated as a matter of course; but the court may exercise a large discretion in granting or denying an application to open or vacate a default judgment. * * *"

In the case of Leslie v. Spencer, 170 Okl. 642, 42 P.2d 119, this court held:

"Applications to set aside default judgments are addressed to the sound discretion of the trial court, and the action of the trial court on such applications will not be reversed except upon a clear showing of an abuse of discretion."

In Schuman v. Sternberg, 179 Okl. 15, 65 P.2d 410, 412, this court held:

"In a proceeding to vacate a judgment on the ground of unavoidable casualty and misfortune, it must appear that the complaining party is not guilty of negligence in allowing such default to be taken, and that no reasonable or proper diligence or care could have prevented the trial or judgment."

We are of the opinion that these authorities are controlling in the case at bar.

Judgment affirmed.

CORN, V. C. J., and DAVISON, JACKSON and CARLILE, JJ., concur.

HALLEY, WILLIAMS and BLACKBIRD, JJ., dissent.

HALLEY, Justice (dissenting).

I cannot concur in the majority opinion for the following reasons. I recognize the general rule that the trial court is given a wide discretion in passing upon applications to vacate default judgments, and that the decision of the court will not be reversed on appeal except where it is shown that the court abused its discretion. Here, the default judgment was sought to be set aside upon the statutory grounds of unavoidable casualty and misfortune, by a nonresident of Oklahoma. Service of process was by publication.

However, there is another well established rule that the majority opinion appears to have overlooked or disregarded. That rule is to the effect that it is the policy of the law to have every litigated case tried on its merits. It is clearly announced in the first and second paragraphs of the syllabus in Morrell v. Morrell, 149 Okl. 187, 299 P. 866, as follows:

"It is the policy of the law to have every litigated case tried on its merits,

and default judgments are viewed with disfavor."

"Application to set aside default judgment, filed after term, is addressed to trial court's sound legal discretion; trial court's discretion in passing on application to set aside default judgment should be exercised to promote justice; much stronger showing of abuse of discretion must be made, where default judgment has been set aside, than where it has been refused."

The facts clearly show that the applicant to vacate, Lena Maxey, resided in Denver, Colorado, when the default judgment sought to be vacated was rendered on May 5, 1948. She had been a party to much litigation in Pontotoc County, Oklahoma, growing out of the estate of her deceased father. Mr. C. F. Green, an attorney of Ada, Oklahoma, represented her in all of her legal business in that County for many years. Mr. Green died in January, 1947, and his son, Lawrence Green, had become associated with his father prior to his father's death and had undertaken to take over their pending law business, including cases in which Mrs. Maxey was interested.

When the present action was filed and notice by publication given, Mrs. Maxey promptly mailed the notice to Lawrence Green on March 2, 1948, and asked him what he could do about the case and requested an answer by "return mail." She heard nothing from him until she received a letter dated April 5th, and received by her on April the 9th or 10th, being more than thirty days after she had requested an immediate reply in forwarding her copy of the notice to him.

When Mr. Green wrote Mrs. Maxey on April 5th, 1948, he advised her that he had been covered up with work since his father's death. He advised her that he had conferred with the plaintiffs, thinking he might recover something for her for a quit claim deed, but had failed, and advised her that he did not believe it would pay her to try to redeem the land which had been sold for delinquent taxes. He did not state that he had not filed any pleading or that a default judgment might be taken. Another friend in Ada advised Mrs. Maxey that he doubted she could get anything out of the case except a small sum that might be paid her for a quit claim deed to the land involved.

The evidence is clear that Mrs. Maxey was bedfast when the default judgment was taken against her. She was able to write some letters while in bed but there is no evidence that she did not rely upon her attorney at Ada to look after the case and was not advised by him that he intended to or had permitted a default judgment to be rendered. In Grayson v. Stith, 181 Okl. 131, 72 P.2d 820, 114 A.L.R. 276, this Court said:

"The act of an attorney in abandoning his client's case without notice to the latter, and in permitting a default judgment to be rendered against his client without his knowledge or consent, constitutes unavoidable casualty or misfortune under the seventh subdivision of section 556, O.S.1931 (12 Okl.St.Ann. § 1031, subd. 7)."

I think the evidence is clear that Mr. Green abandoned the case without notice to Mrs. Maxey who evidently felt secure that he was representing her and would continue to represent her. This is not intended as any reflection upon Mr. Green, but it is clear that Mrs. Maxey did not know that he was not going to file any pleading whatever in the case. A demurrer, a motion or general denial would have avoided a default judgment. Mrs. Maxey was never advised that he intended to permit a default judgment.

It is not shown that the vacation of the judgment in question would cause any burden upon the plaintiffs or result in any considerable loss.

I think the default judgment should have been vacated and Mrs. Maxey given her day in court. It is not disputed that the answer attached to her motion to vacate

set up a valid defense to plaintiffs' action. For these reasons I dissent.

I am authorized to state that BLACK-BIRD, J., concurs in the views expressed herein.