OSCN Found Document:FLEIG v. LANDMARK CONSTRUCTION GROUP

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 FLEIG v. LANDMARK CONSTRUCTION GROUP
2024 OK 25
Case Number: 119432
Decided: 04/08/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 25, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

CARL FLEIG, Plaintiff/Appellant,
v.
LANDMARK CONSTRUCTION GROUP, Defendant/Appellee.

CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION IV
HONORABLE ROBERT TRENT PIPES, TRIAL JUDGE

¶0 The appellant, Carl Fleig, lost a lawsuit stemming from a contract dispute over roofing work done in conjunction with the purchase of a house. Subsequently, the trial court awarded $51,331.00 in attorney fees against Fleig. He appealed, and the Court of Civil Appeals affirmed the trial court's attorney fee award. We granted certiorari only to address whether the trial court's order awarding attorney fees evidences that the trial court complied with the directives of State ex rel. Burk v. City of Oklahoma City, 1979 OK 115, 598 P.2d 659. We hold that it does not.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED IN PART AND
WITHDRAWN FROM PUBLICATION;
TRIAL COURT REVERSED IN PART;
CAUSE REMANDED FOR PROCEEDINGS CONSISTENT
WITH THIS OPINION.

E.W. Keller, Harry Dalton, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Phillip A. Schovanec, Oklahoma City, Oklahoma, for Defendant/Appellee.

KAUGER, J.:

¶1 We granted certiorari to address the issue of whether the trial court's order awarding attorney fees evidences that trial court complied with the directives in State ex rel. Burk v. City of Oklahoma City, 1979 OK 115, 598 P.2d 659. We hold that it does not.

FACTS

¶2 In July of 2010, homeowners contracted with the appellee, Landmark Construction Group, Inc., (Landmark) to replace a hail-damaged roof on their home in Oklahoma City, Oklahoma. The homeowners were also in negotiations to sell the house to the appellant, Carl Fleig (Fleig). Fleig's mortgage company required a new roof in order for him to purchase the home. Landmark replaced the roof in August of 2010 for a total cost of $23,125.00.

¶3 By July of 2011, the new roof had leaked and caused damage to both the inside and outside of the home. Outside repairs cost $2,535.00, and inside repairs cost $1,387.51, for a total sum of $3,922.51. Landmark refused to address the leaks on the ground that any warranty given to the prior homeowners did not transfer to Fleig. Fleig paid a contractor to repair the roof and sought $1,400.00 from Landmark to repair the interior damage.

¶4 On December 19, 2011, Fleig sued Landmark claiming that the roof certification it completed for the sale of the house either acted as a warranty or an assurance on which Fleig relied in purchasing the home. Fleig later asserted theories of implied warranty, contractual warranty, and fraud. The matter went to a bench trial on November 2, 2012.

¶5 At the close of Fleig's presentation of evidence, Landmark moved for a directed verdict, which the trial court granted. On November 30, 2012, Landmark filed a motion for attorney fees. An order filed April 15, 2013, reflects that the trial court held a hearing on attorney fees on December 20, 2012, and signed an order awarding Landmark $5,000.00 in attorney fees.

¶6 On April 15, 2013, Fleig appealed, and the Court of Civil Appeals affirmed the trial court. On June 8, 2015, we vacated the Court of Civil Appeals opinion and adopted the dissenting opinion. We remanded the matter to the trial court because Fleig had established a prima facie case for several possible theories of recovery. A different trial judge held a second bench trial on January 12, 2017, giving Landmark the opportunity to contest the facts which were previously presented by Fleig.

¶7 On March 30, 2017, the trial court filed a judgment, and it entered an award against Landmark for $2,725.00. On April 13, 2017, Fleig appealed. While the appeal was pending, Fleig filed a motion for attorney fees in the trial court, requesting $29,995.00. On December 20, 2019, the Court of Civil Appeals affirmed the trial court in part, reversed it in part, and remanded the cause. The Court of Civil Appeals opinion provided in pertinent part:

. . . Based on the evidence produced during the second trial, and considering the evidence from the first trial, it is clear that Landmark did not contract to do the work on Fleig's roof that the district court found to be the proximate cause of Fleig's damages. Likewise, a 'Roofing Certification' provided by Landmark at the time Fleig purchased the house was not shown to be misleading or the cause of any damage suffered by Fleig. Fleig did not appeal the judgment in favor of Landmark that excluded the damage to the interior of his house or certain work outside the scope of the Landmark contract. That part of the judgment is affirmed. The remaining portion of the judgment is reversed, and the case is remanded with instructions to enter judgment for Landmark. . . .

¶8 Fleig petitioned this Court for certiorari, and on January 9, 2020, we denied his request. On June 15, 2020, we granted Landmark's Motion for Appeal-Related Costs and taxed $388.50 in appeal-related costs against Fleig. After mandate issued on July 16, 2020, Landmark filed motions for attorney fees and costs in the trial court. It sought $1,621.85 in costs, and $65,666.50 in attorney fees for both trial court and appellate court work. The spreadsheet used to supplement the attorney fee motion begins in February of 2014, and ends on July 29, 2020.

¶9 Fleig objected to Landmark's costs, but agreed that $925.14 was proper. Fleig also disputed the attorney fees as excessive. Even though he previously sought nearly $30,000.00 in attorney fees himself, he suggested that only $3,000.00 in attorney fees was reasonable to award Landmark.

¶10 On February 24, 2021, the trial court entered a two-page order awarding $925.14 in costs and $51,331.50 in attorney fees to Landmark. The order provides in pertinent part:

. . . As for the Defendant's claim for attorney's fees the Court notes that there is no dispute that the hourly rate of Defense counsel is reasonable. Further, there is no dispute that this application should be reviewed under a 'loadstar' [sic]analysis. See State ex rel. Burk v. City of Oklahoma City, 1979 OK 115, ¶8. This case has had somewhat of a tortuous road to its conclusion having been heard by two trial judges and having been appealed twice. The complexity and hard fought nature of the case is [sic] should not be diminished by the claimed amount in dispute as evidence by the length and nature of the proceedings which included a combined forty one pages of appellate opinions to lead to this point. The parties further stated that they were not requesting a detailed analysis and order but rather just wanted a 'number.' . . .

¶11 On March 25, 2021, Fleig appealed, arguing that the attorney fee award was excessive. The Court of Civil Appeals affirmed the trial court, holding that the fee award was not inherently excessive, and that Fleig's arguments concerning over billing were waived on appeal. We granted certiorari on February 13, 2024, to give guidance to trial judges as to what is required to be set forth in an order awarding attorney fees.

A TRIAL COURT ORDER AWARDING ATTORNEY FEES MUST SET
FORTH WITH SPECIFICITY THE FACTS AND COMPUTATION TO 
SUPPORT THE AWARD. THE TRIAL COURT MUST MAKE FINDINGS
OF FACT, INCORPORATED INTO THE RECORD, REGARDING THE 
HOURS SPENT, REASONABLE HOURLY RATES, AND THE VALUE
PLACED ON ADDITIONAL FACTORS IN EACH CASE. 

¶12 Landmark argues that the trial court's award of attorney fees was reasonable, especially considering the length of time this cause has taken, and the nature of the multiple issues involved. Fleig disagrees. He seeks an award that is approximately six percent of what the trial court awarded.

¶13 The rules that each litigant bears the cost of their legal representation and our courts are without authority to assess and award attorney fees in the absence of a specific statute or a specific contract between the parties are firmly established in this jurisdiction.[1] When a question on appeal presents the issue of reasonableness of attorney fees awarded by the court, abuse of discretion of the trial judge is the standard of review.[2] Under this standard, a trial court will not be reversed unless it made a clearly erroneous conclusion against reason and evidence.[3]

¶14 In State ex rel. Burk v. City of Oklahoma City, 1979 OK 115, ¶¶20-22, 598 P.2d 659, the Court set forth what evidence an attorney is required to present to the trial court when seeking attorney fees. We also delineated what a trial court must do in order for this Court to review an award under the abuse of discretion standard. Today we take the opportunity to express that a trial court order awarding attorney fees must, with specificity of facts and computations to support an award, include findings of fact regarding hours spent, reasonable hourly rates and the value placed on additional factors in each case.

¶15 The only issue presented in Burk was whether the trial court's award of attorney fees to be paid from an equitable fund was excessive. The Court looked to three federal cases[4] and the Oklahoma Code of Professional Responsibility,[5] to set forth factors as a guidance for trial courts to determine what amount of attorney fees to award.

¶16 The numerous factors included:

1) the time and labor required;
2) the novelty and difficulty of questions;
3) the skill required to perform the legal service properly;
4) the preclusion of other employment by the attorney;
5) the customary fee;
6) whether the fee was fixed or contingent;
7) time limitations imposed by the client or circumstances;
8) the amount involved and results obtained;
9) the experience, reputation and ability of the attorneys;
10) the undesirability of the case;
11) the nature and length of the relationship with the client;
12) the type of work involved;
13) the number of hours expended;
14) the contingent nature of the litigation;
15) the benefits conferred on plaintiff;
16) services rendered to the public; and
17) difficulty of issues and skill involved.

¶17 The Burk Court also expressly directed what attorneys must present to the trial court to recover attorney fees, and what the trial court must include in its order awarding attorney fees. Attorneys must present to the trial court detailed time records showing the work performed, and other evidence as to the reasonable value for the services performed as measured by the local legal community standards. Lawyers seeking reasonable compensation such as an incentive or bonus must offer evidence relating to one or more of the criteria or standards for reasonable fees set forth by this Court.

¶18 Regarding the trial court we said:

A particular word of caution to the trial judges of Oklahoma is here warranted. When a question on appeal presents the issue of reasonableness of attorney's fees awarded by the court, abuse of discretion by the trial judge is the standard of review. Therefore, the trial court should set forth with specificity the facts, and computation to support his award. While the compensatory fee is not all that difficult a problem on review if the trial court has made findings into the record regarding hours spent and reasonable hourly rates, the value placed on additional factors will be different in each case. Obviously, the reasonable value to be given for incentive fees should bear a reasonable relationship to the aggregate hourly compensation.

¶19 The problem in this cause is that the parties appeared to lessen the trial court's duties by stating that "they were not requesting a detailed analysis and order, but rather just wanted a 'number.'" However, this they cannot do. In Spencer v. Oklahoma Gas & Electric Company, 2007 OK 76, ¶28, 171 P.3d 890, the Court reviewed a trial court's award of attorney fees and determined that the trial court failed to follow the directives of Burk, supra.

¶20 The trial court announced in its decision at the conclusion of the attorney fee hearing, listing the factors it considered under Burk, supra, but there was no evidence that the guidelines, other than the comparison of the fee to the amount recovered, played any real role in setting the attorney fee award. Accordingly, we held that the failure to follow the Burk directives required reversal.

¶21 Here, even though it was at the parties' request, the trial court order awarding attorney fees does not set forth with specificity the facts and computation to support the award. While there is some evidence regarding hours spent, etc., there were no findings of fact incorporated into the record regarding the hours spent, reasonable hourly rates, and the value placed on any additional factors. Pursuant to our holdings in Burk, supra, and Spencer, supra, we hold that the trial court abused its discretion in its failure make findings of fact and incorporate them into the record, following the Burk directives. In order to allow the trial court to comply, reversal is required. In all other respects, the Court of Civil Appeals opinion is affirmed.

¶22 On May 5, 2023, after the Court of Civil Appeals issued its opinion in this cause, Landmark filed a motion for appeal-related attorney fees. Because we vacate the Court of Civil Appeals opinion in part, and remand this cause to the trial court for further proceedings consistent with this opinion, an award of appeal-related attorney fees is premature at this time.

CONCLUSION

¶23 A trial court order awarding attorney fees must set forth with specificity the facts and computation to support the award. The trial court must make findings of fact incorporated into the record regarding the hours spent, reasonable hourly rates, and the value placed on additional factors. The parties' request to just "give them a number" does not alleviate the trial court of this duty.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED IN PART AND 
WITHDRAWN FROM PUBLICATION;
TRIAL COURT REVERSED IN PART;
CAUSE REMANDED FOR PROCEEDINGS CONSISTENT
WITH THIS OPINION.

ROWE, V.C.J., KAUGER, EDMONDSON, GURICH, DARBY, KUEHN, JJ., REIF, S.J., concur.

WINCHESTER, COMBS, JJ., dissent.

KANE, C.J., recused.

FOOTNOTES

[1] Boatman v. Boatman, 2017 OK 27, ¶16, 404 P.3d 822; Eagle Bluff, L.L.C. v. Taylor, 2010 OK 47, ¶16, 237 P.3d 173 (quoting Kay v. Venezuelan Sun Oil Co., 1991 OK 16, ¶ 5, 806 P.2d 648, 650).

[2] State ex rel. Harris v. Three Hundred Twenty Five Thousand & Eighty Dollars, 2021 OK 16, ¶17, 485 P.2d 242; Childers v. Childers, 2016 OK 95, ¶28, 382 P.3d 1020; McCabe v. McCabe, 2003 OK 86, ¶13, 78 P.3d 956; Merritt v. Merritt, 2003 OK 68, ¶20, 73 P.3d 878.

[3] Boatman v. Boatman, see note 1, supra; Broadwater v. Courtney, 1991 OK 39, ¶7, 809 P.2d 1310; Abel v. Tisdale, 1980 OK 161, ¶20, 619 P.2d 608.

[4] Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanity Corp., 487 F.2d 161 (3rd Cir. 1973); Evans v. Sheraton Park Hotel, 503 F.2d 177, 187 (D.C. Cir. 1974); National Ass'n of Reg. Med. Programs, Inc. v. Weinberger, 396 F.Supp. 842 (D.C. Cir. 1975), [award of attorney fees reversed, 551 F.2d 340 (D.C. Cir. 1976).

[5] The Code of Professional Responsibility in effect at the time was 5 O.S. 1971 Ch. 1, App. 3, DR. 2-106. The current version of this provision provides in now 5 O.S. 2021 Ch. 1, App. 3, Rule 1.5 and it provides:

(a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of determination.

(d) A lawyer shall not enter into an arrangement for, charge, or collect:

(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(2) a contingent fee for representing a defendant in a criminal case.

(e) A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
(2) the client agrees to the arrangement and the agreement is confirmed in writing; and
(3) the total fee is reasonable.

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1991 OK 16, 806 P.2d 648, 62 OBJ 785, 
Kay v. Venezuelan Sun Oil Co.
Discussed

 
1991 OK 39, 809 P.2d 1310, 62 OBJ 1311, 
Broadwater v. Courtney
Discussed

 
2003 OK 68, 73 P.3d 878, 
MERRITT v. MERRITT
Discussed

 
2003 OK 86, 78 P.3d 956, 
MCCABE v. MCCABE
Discussed

 
2007 OK 76, 171 P.3d 890, 
SPENCER v. OKLAHOMA GAS & ELECTRIC COMPANY
Discussed

 
2010 OK 47, 237 P.3d 173, 
EAGLE BLUFF, L.L.C. v. TAYLOR
Discussed

 
2016 OK 95, 382 P.3d 1020, 
CHILDERS v. CHILDERS
Discussed

 
2017 OK 27, 404 P.3d 822, 
BOATMAN v. BOATMAN
Discussed

 
1979 OK 115, 598 P.2d 659, 
STATE EX REL. BURK v. CITY OF OKLAHOMA CITY
Discussed at Length

 
1980 OK 161, 619 P.2d 608, 
Abel v. Tisdale
Discussed

 
2021 OK 16, 485 P.3d 242, 
STATE ex rel. HARRIS v. THREE HUNDRED TWENTY FIVE THOUSAND AND EIGHTY DOLLARS
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA